WOODBURY SHOE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10229.   Promulgated March 31, 1930.

*John E. Hughes, Esq., Manton M. Wyvell, Esq., William Cogger, Esq., George G. Witter, Esq.,* for the petitioner.
*Harold Allen, Esq.,* and *W. R. Lansford, Esq.,* for the respondent.

**436**

TRUSSELL: The petitioner contends that the facts bring it within the scope of the provisions of subdivisions (a), (c), and (d) of section 327 of the Revenue Act of 1918, and that, therefore, it is entitled to assessment pursuant to the provisions of section 328 of the said act.

Section 327 of the Revenue Act of 1918 provides:

That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326:

\* \* \* \* \* \* \*

(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The business which petitioner is and was carrying on during 1919 was commenced in 1869 by a partnership which operated continuously until 1902. During that time fixed assets of considerable value were acquired. Also, during that period the partnership built up a nation-wide business and a valuable good will, the actual value of which can not now be determined because of the destruction of the partnership books, but the testimony is to the effect that such good will had a value of at least $50,000 in 1902. The partnership also had various trade-marks which it used on its products sold in all parts of the country. That going business and the assets, both tangible and intangible, were paid in to the petitioner for $40,000 par value of its capital stock and a note for $5,000. The actual value of those assets in 1902 can not now be determined, but we are convinced that petitioner's initial invested capital was mate-

rially in excess of the par value of the capital stock issued in 1902, and that such understated invested capital has been reflected on its books through the years including the year in question, especially as to the good will, the value of which has never been included in petitioner's invested capital.

In 1911 the petitioner enlarged its plant and expended more than $50,000 in capital improvements and the greater portion of that amount was charged off to expense and can not now be segregated. Also, petitioner has developed numerous trade-marks, the cost of which has been charged off to expense.

The stockholders of petitioner have followed a practice of leaving a portion of their dividends in the business and in January, 1919, undrawn dividends credited to the five stockholders' personal accounts totaled $175,224.66 and in December, 1919, they totaled $181,687.

The respondent has computed invested capital for 1919 in the following manner:

| | |
|---|---|
| Capital stock outstanding Jan. 1, 1919 | $96,000.00 |
| Surplus as adjusted Jan. 1, 1919 | 786,282 45 |
| Reserves | 62,000.00 |
| | 944,282.45 |
| Less: Adjustments for prior year's taxes and inadmissible assets | 50,144.16 |
| | 894,138.29 |

While it is true that some of the fixed assets acquired in the early years of the business became worn out or were replaced prior to the year 1919, it is quite apparent and we are convinced, from the record as a whole, that petitioner's invested capital for 1919 can not be definitely and accurately determined. The respondent has determined petitioner's invested capital to be $894,138.29 and its net income to be $767,343.30 for the year 1919. This, together with all the facts found, clearly shows an abnormality in the relation between invested capital and the net income which condition would work an exceptional hardship upon petitioner if its excess-profits tax should be computed without the benefit of section 328 of the Revenue Act of 1918.

We are of the opinion that petitioner's excess-profits tax for 1919 should be computed pursuant to the provisions of section 328 of the Revenue Act of 1918.

Further proceedings may be had pursuant to Rule 62 (c).